UNITED STATES DISTRICT COURT
~~EASTERN~~ DISTRICT OF ~~PENNSYLVANIA~~    *MASS*                    *ON16*
                                           ------------------------X
~~Jin Ren Liu~~ *CHEN*
~~A 72 473 453~~
*72 460 150*        Petitioner,            Docket No. 05-CV-*690*

        -against-

~~Bill Riley,~~
District Director,
Bureau of Immigration and Customs Enforcement,
~~Philadelphia~~ District
*Mass*
and                                        **05  10546 RCL**

~~Thomas H. Hogan,~~ Warden
~~York County Prison~~

                Respondent.
        ------------------------------------X


# PETITIONER'S MEMORANDUM IN SUPPORT OF ORDER TO SHOW CAUSE

This memo is submitted in support of the petition for a writ of habeas corpus.


## STATEMENT OF FACTS

Petitioner is a native and citizen of the People's Republic of China who was paroled into the Untied States in 1992. He was ordered excluded by the Immigration Judge, a decision upheld by the Board of Immigration Appeals ~~in 1998~~. He married his *in 2004 — they have one child,* wife ~~on April 25, 2002.~~ He has lived in the United States for more than 10 years and has successfully worked as a specialty cook and paid taxes. He has not committed any crimes while in the U.S.

Mr. LIU was filed an Application for Alien Employment Certification on March 31, 1999 for certification as a specialty cook. This application was granted. He filed an Immigrant Petition for Alien Worker, form I-140, dated February 5, 2001 in order to receive an immigrant visa which would allow him to apply for lawful permanent residence status. This was approved February 14, 2001.

On December 13, 2001, Mr. LIU filed an application for adjustment of status, form I-485, including a filing under Immigration and Nationality Act § 245i, form I-485 Supplement A, with the Vermont Service Center. The application was transferred to Philadelphia.

Mr. LIU and his wife are eligible to become a lawful permanent resident under 8 U.S.C. 245(i) based upon the approved application for labor certification and approved I-140 immigrant petition. Mr. LIU filed an Application to Adjust Status (form I-485), and an application to waive the consequences of entry without inspection (form I-485, Supplement A). He is legally eligible for adjustment of status, notwithstanding his prior exclusion and deportation from the United States.

## ARGUMENTS

I.  **THE RESPONDENT ERRED AS A MATTER OF LAW AND VIOLATED DUE PROCESS IN ATTEMPTING TO REMOVE PETITIONER BEFORE ADJUDICATING PETITIONER'S ADJUSTMENT OF STATUS APPLICATION**

In 1994, Congress enacted section 245 (i) of the Immigration and Naturalization Act, which allows certain persons— who have an immigrant visa immediately available but entered without inspection or otherwise violated their status and thus are ineligible to apply for adjustment of status in the United States—to apply if they pay a $1,000 penalty.

2

The 245(i) provision terminated on January 14, 1998 but beneficiaries of an immigrant visa petition that was filed before that date was grandfathered. On December 21, 2000, Congress enacted The Legal Immigration and Family Equity (LIFE) Act, which temporarily revived Section 245(i) by extending the ability to preserve eligibility for this provision of law until April 30, 2001. Section 245 (i) is an important practical, humane, pro-family measure that enables prospective immigrants present in the United States to remain with their families while go through they go through the process of becoming lawful permanent resident. Without Section 245(i), many individuals who entered illegally or violated their status are restricted from filing for adjustment in the United States and must obtain their immigrant visas overseas. However, their departure to obtain their immigrant visa abroad could trigger the three-year and 10-year bars to admission to the United States related to unlawful presence.

Pursuant to the regulatory scheme under 8 CFR, section 245.2 (a) (1) and Board of Immigration Appeal's decision in Matter of Castro, 21 I&N Dec. 379 (BIA 1996), for individuals who are in deportation or removal proceeding (other than an arriving alien in removal proceedings), the adjustment application can only be made and considered in those proceedings. In exclusion proceedings, the Immigration Judge and the Board lack jurisdiction to entertain an application for adjustment of status under section 245 of the Act.

Thus for individual who have a deportation or removal order to apply adjustment of status under section 245 (i), the jurisdiction lies in the Immigration Court and the Board of Immigration Appeals, and the case must be reopened. However, for individual who has an outstanding exclusion order to apply for s. 245 (i) benefit, the jurisdiction lies

solely in the district director and reopening of the exclusion case is not required.[1] In fact, if an individual moves the Immigration Judge or the Board to reopen the exclusion proceeding based on eligibility for adjustment of status under section 245 (i), the motion will be denied for lack of jurisdiction. Chen v. Ashcroft, *60 Fed. Appx. 86; 2003 U.S. App. LEXIS 5472*, n. 2, (2d Cir. March 17, 2003).

Prior to the Bureau of Immigration and Customs Enforcement (BICE)'s implementation of the Absconder Apprehension Initiative (AAI) and the National Fugitive Operations Program (NFOP), individuals in exclusions are routinely granted adjustment of status under section 245 (i) of the Act by the District Director, even if the exclusion proceeding was not reopened and even if the individual received a deportation letter (bag & baggage letter) and failed to surrender.

The Absconder Apprehension Initiative (AAI) and the National Fugitive Operations Program (NFOP) were established in January 2002 and February 2002 respectively in response to a Department of Justice, Deputy Attorney General's directive requiring the location, apprehension and removal of aliens who have failed to surrender for removal or comply with a removal order or have an unexecuted final order of removal. Since the implementation of AAI and NFOP, particularly in the past two months, the Bureau of Citizenship and Immigration Service increasingly denied individual's adjustment of status application on the ground that there was an exclusion order against the applicant, or the applicant received a bag & baggage letter and failed to report for deportation, and the Bureau of Immigration and Customs Enforcement

---

[1] The regulations at 8.CFR s. 245.2(a) and 236.4 (1994) grant limited jurisdiction to the Immigration Judge in exclusion proceedings to adjudicate adjustment applications that have been denied by the district director, but only if the alien, after first having been inspected and admitted into the United States, had applied to adjust status and then departed the country under a grant of advance parole.

increasingly detain and deport such people before their adjustment application is adjudicated.

The Respondent committed jurisdictional error and violated Petitioner's due process right in failing to adjudicate Petitioner's adjustment application and in attempting to deport him while his adjustment of status application is pending. The Respondent erred as a matter of law in automatically deny individual's adjustment application based solely or almost solely on the ground that an outstanding exclusion order exists against the Petitioner. As discussed above, as a matter of law, reopening of exclusion order for purpose to apply for relief under section 245 (i) is not required and indeed, if such a motion were to be filed to the Immigration Court or to the Board of Immigration Appeals, it will be denied for want of jurisdiction. The BCIS and BICE, acting under dictation from the Deputy Attorney General's directive, unduly feted their discretion authorized by law, which amounted to failure to exercise discretion. The Congress's purpose in enacting section 245 (i) and the LIFE Act would be thwarted if this is allowed to happen and if a stay of deportation is not granted in Petitioner's favor.

## II. THE COURT HAS JURISDICAITON TO STAY PETITIONER'S DEPORTATION WHILE PETITIONER'S ADJUSTMENT OF STATUS APPLICATION IS PENDING

Respondent argues that section 242(f)(2) of the Act, 8 U.S.C. s. 1252 (f) (2) expressly precludes the Court from enjoining the Petitioner's deportation. However, in light of Supreme Court's decision in INS v. St. Cyr, 533 U.S. 289 (2001) and the Second Circuit's decision in Mohammed v. Reno, 309 F. 3d 95 (2d Cir. 2002), it is clear that

5

section 242(f)(2) was given a narrow reading and the Court does have jurisdiction to stay Petitioner's deportation.

In St. Cyr, *supra*, the Supreme reviewed in length the history of the Court's habeas jurisdiction and concluded that the writ has always been available to review the legality of executive detention, until the 1952 Act, a habeas action was the sole means of challenging a deportation order's legality. Habeas courts have answered questions of law in alien suits challenging Executive interpretations of immigration law and questions of law that arose in the discretionary relief context (Pp. 14—17) and that "[f]or the INS to prevail it must overcome both the strong presumption in favor of judicial review of administrative action and the longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction" and that "Implications from statutory text or legislative history are not sufficient to repeal habeas jurisdiction; instead, Congress must articulate specific and unambiguous statutory directives to effect a repeal." The Supreme Court further articulated that "if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is "fairly possible," see *Crowell* v. *Benson*, 285 U.S. 22, 62 (1932), we are obligated to construe the statute to avoid such problems." Further, the Supreme reiterated "the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien," *INS* v. *Cardoza-Fonseca*, 480 U.S. 421, 449 (1987).

In Mohammed v. Reno, 309 F. 3d 95 (2d Cir. 2002) [2], the Second Circuit noted that two circuits have ruled that section 242(f) does not apply to a court's consideration

---

[2] This case was originally decided by E.D.N.Y., *Mohammed v. Reno*, 205 F. Supp.2d 39 (E.D.N.Y. 2002). In the opinion, the district court judge contended that in light of Supreme Court's analysis in St. Cyr, the

6

of a stay pending appeal, i.e., Maharak v. Ashcroft, 295 F. 3d 963, 964-66 (9th Cir.
2002); Bejjani v. INS, 271 F.3d 670, 687-89 (6th Cir. 2001) and Andreiu v. Ashcroft, 253
F.3d 477, 479-83 (9th Cir. 2001), and the Second Circuit adopt all of the Ninth and Sixth
Circuits reasons as explained in the Ninth Circuit's *in banc* decision in Andreiu. In
particular, the Second Circuit agrees that the use of "enjoin' in subsection 242 (f) (2)
contrasts with the wording "enjoin or restrain" in subsection 242 (f) (1), suggesting that
"enjoin" in (f) (2) applies to a permanent prohibitioOn and that "enjoin or restrain"
applies to both a permanent and an interim prohibition. "Moreover, when congress
wished to legislate concerning a stay pending appeal, it explicitly used the word "stay".
"If Congress wanted to apply a heightened standard to a stay pending appeal, it would
likely have used the word "stay" in subsection 242 (f) (2) instead of 'enjoin'". "The clear
concern of [section 242(f) is limiting the power of courts to enjoin the operations of
immigration laws, not with stays of removal [pending appeal] in individual asylum
cases." 5 Andreiu, 253 F. 3d at 481.

Applying the above reasoning to Petitioner case at bar, the deportation shall be
stayed pending Petitioner's adjustment application. The Respondent argues that the
current matter is distinguished from Mohammed, as the Petitioner does not challenge the
validity of his exclusion order but only asks that the court enjoin the BICE from
deporting him while his application for adjustment of status is pending before the BCIS.
However, both in Mohammed and the case at bar, there are a final administrative removal
or exclusion order and a habeas petition was then filed. Both involved question of law
with respect to the statutory eligibility for discretionary relief under the INA. In

Second Circuit's ruling in *Domond* was wrongly decided. However, the district court concluded that it was
bound to follow *Domond*. The court kept the stay of removal that it had issued in effect, "unless it is lifted
by the court of appeals." The INS then filed a motion to lift the stay with the Second Circuit.

7

Mohamed, the issue is whether Petitioner is eligible for 212 (c) and in the case at bar, the issue is whether Petitioner is entitled to individualized consideration of his adjustment of status application despite a exclusion order and despite the exclusion proceeding is not reopened. Therefore, the Second Circuit's reasoning in Mohammed shall be extended to the instant matter.

### III.    PETITIONER HAS EXHAUSTED HIS ADMINISTRATIVE REMEDIES PRIOR TO THE FILING OF HIS HABEAS PETITION

In addition, the Respondent argues that the Petitioner ahs failed to show that, prior to the filing of the habeas petition, he exhausted his administrative remedies with regard to his attempt to obtain a stay of deportation. In fact, Petitioner did file a request of administrative stay of deportation prior to the filing of the habeas petition. The administrative stay request was filed on October 20, 2003, by FedEx standard overnight. Petitioner duly signed the duplicated I-246 forms, and the correct BCIS fee was included. However, the original application was returned because the deportation and removal branch of the BICE requested Petitioner to "appear in person" to apply, which would be futile because Petitioner would be detained and immediately deported if he appears in person to apply for stay of deportation. As such, Petitioner has exhausted the administrative remedy.

### IV.    PETITIONER WILL SUFFER IRREPARABLE HARM IF STAY OF DEPORTATION IS NOT GRANTED

Finally, Respondent argues that the BICE had no intention of executing the Petitioner's exclusion order on October 22, 2003, as it does not possess the travel documents needed to repatriate him. However, Petitioner's passport was taken during the

brief detention October 9, 2003 when he appeared for processing of employment authorization.

Respondent further argues that in executing final orders of exclusion, the BICE is bound by 8 C.F.R. s. 241.22, which precludes the deportation of an alien, absent his express written consent, less than 72 hours after he has been taken into the physical custody of the BICE. However, it is Respondent's practice to arrange "interview" or "discussions" so as to remove aliens the next day.  This is precisely what recently happened in a case now pending in the Southern District of New York, Fong v. Ashcroft, 03 CV 7251 (Hellerstein, J.). Petitioner faces imminent deportation when he was requested to report to the Detention and Removal branch on October 21, 2003. Petitioner will suffer irreparable harm is stay of deportation is not granted.

## CONCLUSION

For the foregoing reasons and those set forth in Petitioner's petition for a writ of habeas corpus, the Court should grant Petitioner's habeas petition and stay Petitioner's deportation while his adjustment of status application is pending and order him released, or released on bond.

Respectfully submitted,

Theodore N. Cox (TC: 2549)
401 Broadway, Suite 701
New York, New York 10013
(212) 925-1208

Dated: New York, NY
       February 14, 2005

9